IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| S.G. and S.G., as parents and guardians of L.G., a minor,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ROCKFORD BOARD OF EDUCATION and KENNETH HELD, in His Capacity as Principal of Rolling Green Elementary School,<br><br>　　　　Defendants. | Case No.: 08-C-50038<br><br>Judge: Kapala<br>Magistrate Mahoney |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COME the Defendants, the ROCKFORD BOARD OF EDUCATION, SCHOOL DISTRICT NO. 205, WINNEBAGO-BOONE COUNTIES, ILLINOIS (incorrectly identified as "Rockford Board of Education") and KENNETH HELD in his Capacity as Principal of Rolling Green Elementary School, by and through their attorney, Lori L. Hoadley of HINSHAW & CULBERTSON LLP, and as and for their Memorandum of Law in support of their Motion for Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c), state as follows.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). In this case, Defendants are entitled to judgment on the pleadings because, even accepting all well-pled allegations, Plaintiffs cannot prevail on their claims.

**Background Facts**

Plaintiffs, S.G. and S.G. ("Parents") as the parents of a minor, L.G., have sued the Rockford Board of Education, School District No. 205 ("the Board"), and the principal of Rolling Green Elementary School, Kenneth Held in his official capacity ("Principal"), seeking

compensation for alleged violations of federal and state law arising from a first-grade classmate's alleged sexual harassment of Plaintiff L.G.

Count I alleges violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-1688 in the context of a hostile learning environment. Count II alleges violation of 42 U.S.C. § 1983 and of the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 5/1 *et seq.*, pursuant to an alleged failure to protect L.G. from sexual harassment by a classmate and failure to report the peer harassment as allegedly required under the Illinois Abused and Neglected Child Reporting Act.  Count III alleges willful and wanton misconduct, arising from alleged omissions with respect to alleged harassment by L.G.'s classmate. Count IV alleges negligence, and is the subject of a concurrently filed Motion to Dismiss.

Plaintiffs allege that prior to the Christmas holidays in the 2006-2007 school year, a male student transferred from another school district and enrolled in the first grade at Rolling Green Elementary School. (Complaint ¶8).  The Complaint alleges that based on the contents of the first-grade transfer student's records, the Defendants knew or should have known that the first-grade transfer student (hereinafter "the problem first-grader") had a propensity to harm or sexually harass other students. (Complaint ¶10).  In January 2007, the parents of L.G. allegedly told the Principal that L.G. told them that the problem first grader had made "strange sexual requests" of L.G. (Complaint ¶15). The Complaint further alleges that the problem first-grader would sometimes sit beside L.G. in class and put his hands inside the back of L.G.'s pants, although it does not allege Defendants were informed of this. (Complaint at ¶ 18).

On March 14, 2007, the problem first-grader is alleged to have snuck out of his classroom without his teacher's knowledge, and to have taken L.G. to a janitor's closet where he allegedly sexually battered L.G. (Complaint ¶20). The Complaint alleges that L.G and the

problem first-grader were found together in the closet by a school employee, and were taken to the Principal's office. (Complaint ¶¶ 21, 22). During the remainder of the 2006-2007 school year, the problem first-grader allegedly told L.G. she was "hot" and verbalized other unspecified sexual innuendos. (Complaint ¶26). The problem first-grader also allegedly followed L.G. around at school. (Complaint at ¶26). The Defendants' alleged failure to disseminate information from the problem first-grader's transfer records to other school personnel, and alleged failure to adequately respond to complaints by L.G.'s parents, allegedly caused L.G. to experience "emotional and psychological issues," and to be deprived of equal access to Rolling Green Elementary School. (Complaint at ¶¶ 30, 38).

## ARGUMENT

I. **The Plaintiffs fail to meet the pleading standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly.**

To survive a motion seeking dismissal, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir.1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992). The plaintiff must plead allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and where the plaintiff fails to do so, "the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (quoting in part *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). As the Supreme Court explained in *Bell Atlantic*, the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 127 S.Ct. 1964-65. This standard is designed to avoid forcing a defendant to undergo costly discovery unless the

3

allegations of the complaint show that the plaintiff has a substantial case. *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802 -803 (7th Cir. 2008).

Here, Plaintiffs' Complaint fails to plead the operative facts to show Plaintiffs have a right to relief under the theories alleged, or in the alternative, the Complaint asserts theories under which it cannot prevail as a matter of law.

## II.   Count I – Even if taken as true, the allegations of violations of Title IX fail as a matter of law.

Plaintiffs allege that the Defendants violated Title IX by failing to protect L.G. from sexual harassment by her first-grade classmate. To establish a Title IX claim of peer sexual harassment in a public school setting, plaintiffs must show "sexual harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S.629, 651, 119 S.Ct. 1661 (1999). Moreover, a Board is liable in damages only if it is shown to have been "deliberately indifferent to sexual harassment of which [it has] actual knowledge." *Id*. at 650 (emphasis added). The core question in such cases is whether a defendant's response was "clearly unreasonable in light of known circumstances"; this determination is a question of law which may be decided by the Court. *Id*. at 649. Notably, the standard to which a defendant is held is not one of "mere reasonableness." *Id*. Rather, dismissal is appropriate where the defendant's response to known circumstances was "*not clearly unreasonable.*" *Id*. The Supreme Court has observed that in responding to alleged sexual harassment by a student, a Board of Education must avoid exposing itself to constitutional or statutory claims, and is therefore constrained as to the type of disciplinary action it may impose. *Id.*

In addition to showing that a board of education's response to circumstances of which it had "actual knowledge" was "clearly unreasonable," a Title IX plaintiff must also show that the alleged gender-oriented conduct was severe and pervasive. *Id*. The question of whether the alleged conduct is sufficiently egregious to rise to the level of actionable harassment depends on the "surrounding circumstances, expectations, and relationships…including, but not limited to, the ages of the harasser and the victim … Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Id*. at 651. To be actionable, the Court in *Davis* explained that the alleged behavior must be "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity," and "[a]lthough, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level." *Id*. at 652-53.

A parent's testimony concerning something his child told him is insufficient evidence of Title IX sexual harassment. *Gabrielle M. v. Park Forest-Chicago Heights, Illinois School Dist. 163*, 315 F.3d 817, 822-23 (7th Cir. 2003). Under Title IX, a plaintiff must not only show "when, where or how often" the alleged harassment occurred, and that administrators had actual knowledge of the harassment, but also that the conduct had a "concrete, negative effect" on the victim's education, such as causing a drop in grades, causing the victim to become homebound or hospitalized, or was characterized by physical violence. *Gabrielle,* 315. F.3d at 822-23.

*Gabrielle* bears many similarities to the case at bar. In that case, the parents of a kindergartner who was sexually harassed by a classmate unsuccessfully sued a school district, alleging both a Title IX violation and infliction of emotional distress. Summary judgment was

entered for the school district based on the district court's finding that the school district's conduct in response to the incidents of which it had actual notice was "not clearly unreasonable." *Id.* at 824. The trial court's dismissal of the case was affirmed on appeal.

The problem kindergarten student in *Gabrielle* began "bothering" his classmate, Gabrielle, the plaintiff in the case, on the first day of class. In October, he jumped on Gabrielle's back at recess. *Id.* at 818-19. On October 21, the problem kindergartener leaned against Gabrielle with his hands on his crotch. *Id.* On two occasions, the problem kindergartener was observed unzipping his pants and showing classmates his underwear, and on one occasion he was seen with his hands inside a female child's pants at story time. *Id.* at 819. The problem kindergartener and four other children were also observed "climbing upon and kissing one another." *Id.* at 821. Over time, Gabrielle, began to express a desire not to go to school, began having nightmares, and experienced loss of appetite and bed-wetting episodes. *Id.* at 819-20. After Gabrielle's parents reported the October 21 episode in which the problem kindergartener leaned across Gabrielle with his hands on his crotch, the problem student was disciplined, first by being sent to the principal and being placed in "time-out," and later by being subjected to a half hour of after-school detention. Thereafter, Gabrielle's parents requested that Gabrielle be moved to a different classroom. *Id.* at 819. The School District granted their request. *Id.* Gabrielle's parents then reconsidered and asked that Gabrielle remain in her original classroom and that the problem kindergartener be moved to a different classroom; the school district once more agreed. *Id.*

Although the school district attempted to keep the problem student away from Gabrielle at lunch and recess times, he continued "bothering" her during those times. *Id.* Gabrielle's parents eventually requested that their daughter be re-assigned to a different school, and the school district agreed to do so. *Id.* at 820. The district court dismissed the case on summary

6

judgment, concluding that the school district did not show deliberate indifference, and that its response to the reported conduct was adequate. The Seventh Circuit affirmed.

Here, the Defendants' conduct in responding to complaints by L.G.'s parents was similar to the response of the school district in *Gabrielle*. As noted by the Seventh Circuit in *Gabrielle*, a parent's claim that his or her child reported sexual remarks allegedly made by a classmate does not represent actionable harassment. *See Gabrielle,* 315 F.3d at 822-23. Thus, the allegation that L.G. told her parents that the problem first grader made a "strange sexual request" in January 2007 does not allege actionable sexual harassment. As a result, the January 2007 incident does not constitute sexual harassment under Title IX, and when L.G.'s parents told the school about the remarks, Defendants did not thereby receive "actual notice" of Title IX sexual harassment.

Accordingly, the March 2007 incident in which L.G. and the problem first grader were discovered together in a closet at the school represents the first incident of alleged sexual harassment of which the School District had actual knowledge. The only sexual harassment that is alleged to have occurred after the March 2007 closet incident are allegations that the problem first grader told L.G. she was "hot" and uttered "other sexual innuendoes, and "continued to follow her and stalk her on the playground and other locations at Rolling Green Elementary." (Complaint at ¶ 27). These allegations do not allege conduct sufficiently severe, pervasive, and objectively offensive so as to cause a concrete, negative effect on L.G.'s education, sufficient to constitute actionable Title IX sexual harassment under the standards articulated in *Gabrielle* and *Davis*.

Finally, it should be noted that to constitute deliberate indifference, the defendants' response must be tantamount to recklessness; in other words, the risk that was allegedly ignored must be so great that the danger it represents must be almost certain to materialize if nothing is

7

done. *See Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). Under Title IX, liability arises where the consequences of such a risk "merges with intention to bring about the consequences (more precisely, to allow the consequences to occur though they could readily be prevented from occurring)." *Id*. A Title IX defendant is "deemed deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is <u>clearly unreasonable</u> in light of the <u>known circumstances</u>." *Davis*, 526 U.S. at 648, 119 S.Ct. 1661 (emphasis added). Moreover, plaintiffs are not entitled to demand a particular course of action in response to allegations of student-on-student harassment, and indeed the Supreme Court in *Davis* rejected a standard that would force schools to suspend or expel every student accused of misconduct. *See Id*. 526 U.S. at 648. All that is required under *Davis* is that the school not be "clearly unreasonable" in it response to <u>known instances</u> of harassment. *Id*.

Here, the Complaint alleges that after the March 2007 closet incident, wherein the Defendants obtained actual knowledge of an incident of alleged sexual harassment, they failed to prevent the harassing conduct that allegedly followed: the problem first-grader communicating to L.G. that he thought she was "hot," his verbalization of sexual innuendoes, and his following her around at school. Plaintiffs' allegations do not allege a response that was "clearly unreasonable" under the circumstances, or that constituted "deliberate indifference to sexual harassment of which [Defendants had] actual knowledge." *See Davis*, 526 U.S. at 650. The Defendants are accordingly entitled to judgment in their favor as to Count I.

**III.   Count II – Plaintiffs' § 1983 claims are preempted by Title IX, and fail as a matter of law under Monell.**

In Count II, Plaintiffs assert a claim under 42 U.S.C. §1983, based on Defendants' alleged failure to "protect [L.G.] and to notify the proper authorities when they were put on notice" of the alleged sexual harassment. The federal right Plaintiffs invoke in Count II arises

8

under Title IX. ("this peer sexual harassment … was so severe, pervasive and objectively offensive and it so undermined student L.G.'s educational experience that she was effectively denied equal access to the elementary school"). (Complaint at ¶ 38.)

Title IX, however, preempts Plaintiffs' §1983 claim because "there is no parallel right of action under Section 1983 against a federally funded education program where Title IX provides a sufficient private right of action for the allegedly unlawful policy or practice." *Doe v. Smith*, 470 F.3d 331, 339 (7th Cir. 2006). As early as 1996, the Seventh Circuit explained that "Congress saw Title IX as the device for redressing any grievance arising from a violation of federal civil rights by an educational institution." *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 862-63 (7th Cir. 1996). Moreover, in enacting Title IX, "Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officials associated with those institutions." *Id*. With the advent of Title IX, "Congress closed the avenue created by §1983 to all plaintiffs who could follow the way created by Title IX." *Id*. at 863. Plaintiffs' claims under §1983 therefore fail as a matter of law, and Defendants are entitled to judgment in their favor as a matter of law on Count II.

In the alternative, even if Plaintiffs' §1983 claims were not preempted, suits against municipal agents in their official capacities are, in effect, identical to suits against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). "To be vicariously liable under the doctrine of *respondeat superior*, a tort, that is to say a civil wrong recognized as such by the law, must have been committed in the scope of employment." *Pvne v. Witmer*, 129 Ill.2d 351, 359, 543 N.E.2d 1304, 1308 (1989); *Montgomery v. Petty Mgmt. Corp.*, 323 Ill.App.3d 514, 517, 752 N.E.2d 596, 598 (1st Dist. 2001). Although a plaintiff may sue a local government unit under §1983, the local government unit cannot be held liable under §1983 on a *respondeat superior*

9

theory for employing a tortfeasor. *Monell v. Dept. of Social Serv's*, 436 U.S. 658, 690-91 (1978). "Rather, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [for which] the government as an entity is responsible under §1983." *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993).

A policy may be established by inaction or custom. *Id.* Thus, a school district may be liable under § 1983 if it: (1) had an express policy that, when enforced, caused a constitutional deprivation; (2) had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). For *Monell* liability to attach, the policy, practice, or custom must be established prior to and be the cause of the alleged illegal conduct. In other words, a widespread policy must be "permanent and well settled," and the injury must have occurred because of its existence. *McCormick*, 230 F.3d at 324. Here, Plaintiffs have not alleged that their constitutional deprivation was the result of any express policy or widespread practice. Nor have Plaintiffs alleged that the Principal is a final policymaker.

Whether a particular official has "final policymaking authority" is a question of state law. *Jett v. Dallas Indep. School. Dist.*, 491 U.S. 701, 737 (1989); *Duda v. Bd. of Educ. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). It is the Court's role to identify the officials or governmental bodies who speak with final policymaking authority for the local governmental act or concerning the action alleged to have caused the particular constitutional or statutory violation at issue. *Jett*, 491 U.S. at 737.

It is well-established under Illinois law that the board of education is the final policymaker under § 1983. *See, e.g., Duda*, 133 F.3d at 1061. A board may only be held liable for actions of an employee, then, if it delegated its final policymaking authority to that employee. However, "[t]he fact that a particular official – even if a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). Moreover, simply giving an employee final decision-making authority with respect to individual employment decisions is not enough to subject a local governmental body to § 1983 municipal liability. *See, e.g., Hill v. Silsbee Indep. School Dist.*, 933 F.Supp. 616, 622 (E.D.Tex. 1996).

Because Plaintiffs have failed to identify evidence of repeated violations of a specified constitutional right, and because Plaintiffs have failed to present evidence that the Board had actual or constructive notice of any alleged violation of a specified constitutional right, Plaintiffs cannot support a claim for municipal liability under § 1983. *Bd. of the County of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (rejecting failure to train claim).

Plaintiffs have failed to allege a municipal policy or practice of the Board reflecting deliberate indifference to the risk of a constitutional violation, and fail to identify a final policymaker who was responsible for the alleged constitutional deprivation. For these reasons, and because the claims are preempted, Count II should be dismissed with prejudice.

**IV.    Count III is barred by the Local Governmental and Governmental Employees Tort Immunity Act.**

Count III alleges that the Defendants were wilful and wanton in failing to disseminate information about the problem first-grader to other school personnel, failing to prevent the alleged harassing conduct, and in violating the Illinois Abused and Neglected Child Reporting

11

Act.[1] (Complaint ¶¶45-47, 71). The Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") bars Count III. 745 ILCS 10/1-101.

The Tort Immunity Act, at 745 ILCS 10/2-201, provides that: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* "[A]n employee may be granted immunity if he holds either a position involving the determination of policy or a position involving the exercise of discretion." *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill.2d 335, 341, 692 N.E.2d 1177, 230 Ill.Dec. 11 (1998). "[D]iscretionary acts are those which are unique to a particular public office." *Snyder v. Curran Twp.*, 167 Ill.2d 466, 474 (Ill.1995). The Tort Immunity Act is intended to "protect local public entities and public employees from liability arising from the operation of government" and to "prevent the diversion of public funds from their intended purpose." *DeSmet v. County of Rock Island*, 219 Ill.2d 497, 504-05, 848 N.E.2d 1030 (Ill. 2006).

Also relevant to this action is Section 2-109 of the Act, which immunizes a local public entity from liability for an injury resulting from an employee's act or omission where the employee is not liable. 745 ILCS 10/2-109. Together, Sections 2-201 and 2-109 of the Act provide discretionary immunity to public entities. *Smith v. Waukegan Park Dist.*, 2008 WL 1746664, 3 (Ill. April 17, 2008) (citing *Arteman v. Clinton Comm. Unit School Dist. No. 15*, 198 Ill.2d 475, 484, 763 N.E.2d 756 (2002) ("Because '[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable'

---

[1] Although Plaintiffs characterize Count III as alleging, in part, a violation of the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 5/1 and 89 Ill. Admin. Code § 300, the Act does not authorize a private cause of action for violations, thus Plaintiffs lack standing to assert a claim under the Act.

70557604v1 887625

[citation], this broad discretionary immunity applies to the entities themselves")); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 496, 752 N.E.2d 1090 (Ill. 2001) ("the discretionary immunity doctrine is codified in Sections 2-109 and 2-201 of the Act, which provide that 'a public employee serving in a position involving the determination of policy or the exercise of discretion [and, thereby, the local public entity,] is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused' ")).

Plaintiffs point to the Illinois Abused and Neglected Child Reporting Act ("Reporting Act"), 325 ILCS 5/1 and 89 Ill. Admin. Code § 300 app. B, as limiting discretion, and as alleged further evidence of willful and wanton conduct.[2] However, Plaintiffs' reliance on the Reporting Act is misplaced. The Reporting Act declares that any "school personnel ... having reasonable cause to believe a child known to them ... may be an abused child or a neglected child shall immediately report" the suspected abuse to the Department of Children & Family Services ("DCFS"). 325 ILCS 5/4. However, the Reporting Act defines an abused child as one who is harmed, injured or abused by a "… ***parent*** or ***immediate family member***, or ***any person responsible for the child's welfare***, or ***any individual residing in the same home as the child,*** or ***a paramour of the child's parent***." 325 ILCS 5/3 (*emphasis added*). Thus, the Reporting Act does not mandate reporting where abuse is alleged to have been committed by a classmate at school.

Even if the Reporting Act was intended to be interpreted expansively, so as to provide that sexual harassment/abuse of a child by another child at school must be reported to DCFS, a school official's duty to report such harassment/abuse under the Reporting Act is discretionary.

---

[2] As noted in Defendants' Answer and Affirmative Defenses, Principal Held did, in fact, report the incident to DCFS.

13

*Doe v. Bd. of Educ. of Consol. Sch. Dist. 230*, 18 F.Supp.2d 954, 962 (N.D.Ill. 1998). The Reporting Act requires a school official to have "reasonable cause" to report harassment/abuse. 325 ILCS 5/4. Moreover, the Reporting Act requires that allegations of sexual harassment/abuse must be "credible." 325 ILCS 5/2. Thus, a school official must make a determination of whether a report of sexual abuse is credible. Reaching such a conclusion clearly entails the exercise of discretion. *Doe,* 18 F.Supp.2d at 962.

Finally, it should be noted that Plaintiffs describe Defendants' conduct in Count III as "willful and wanton," presumably attempting to circumvent immunity under the Tort Immunity Act. However the Illinois legislature has not exempted willful and wanton conduct from immunity under 2-201 of the Act. *See In re Chicago Flood Litigation*, 176 Ill.2d 179, 195-96 (Ill.1997) ("The plain language of Section 2-201 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct … Since the legislature omitted such a limitation from the plain language of Section 2-201, then the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct. [citations omitted]. Cases holding to the contrary ... are overruled on this point.")

Plaintiffs cite to *Doe v. Chicago Bd. of Educ.*, 213 Ill.2d 19 (2004), apparently suggesting that *Doe* provides authority for the proposition that the Defendants in the case at bar had a duty to warn and protect other students from the problem first-grader, and are liable for any supposed breach of that duty. As articulated more fully in Defendants' Motion to Dismiss and brief in support thereof, incorporated herein by reference, the facts in *Doe* are far different than those presented here, inasmuch as the offending youth in that case "had a deviant sexual history, had been declared a sexually aggressive child and youth ward (SACY), and was under a "Protective Plan" requiring that he never be left unsupervised among other children." *Id*. at 22.

14

Nevertheless, the defendants in *Doe* knowingly gave the SACY youth unsupervised access to a disabled child on a school bus, whereupon the SACY youth assaulted the disabled child. By contrast, in the case at bar, the problem first-grader was a first grade child who had not been adjudicated a sex offender, and who is alleged in the complaint to have <u>snuck out of the classroom without his teacher's knowledge</u>. Thus, the school had no notice that the problem first-grader posed a sexual threat, and in any event, the Complaint affirmatively pleads that he was not knowingly given access to L.G. on the date of the closet incident. For these reasons, Count III should be dismissed as a matter of law, with prejudice.

WHEREFORE, for the reasons set forth herein and in Defendants' Motion for Judgment on the Pleadings, the Defendants, ROCKFORD BOARD OF EDUCATION, SCHOOL DISTRICT NO. 205, WINNEBAGO-BOONE COUNTIES, ILLINOIS, and KENNETH HELD, respectfully request that this Court enter an Order either dismissing this case, or granting judgment in its favor and against Plaintiffs, plus costs of suit.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/ Lori L. Hoadley
Lori L. Hoadley
Hinshaw & Culbertson LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
815-490-4900

**AFFIDAVIT OF SERVICE**

The undersigned certifies that on May 6, 2008, a copy of the foregoing was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

**S.G. and S.G. v. Rockford Board of Education, School District No. 205**

For Plaintiff:
Joyce O'Neill Austin, Esq.
The Law Offices of Shriver, O'Neill & Thompson
515 N. Court Street
Rockford, IL  61103
Phone  815.963.4896
Fax     815.963.4904


/s Rhonda Walker


Firm No. 695
HINSHAW & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL  61105-1389
Phone  815.490.4900
Fax     815.490.4901

70557604v1 887625