IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| S.G. and S.G., as parents and guardians of L.G., a minor, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No.: 08-C-50038 |
| ROCKFORD BOARD OF EDUCATION and KENNETH HELD, in His Capacity as Principal of Rolling Green Elementary School, | ) ) ) ) ) | Judge: Kapala Magistrate Mahoney |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR JUDGMENT ON THE PLEADINGS**

NOW COME the Defendants, the ROCKFORD BOARD OF EDUCATION, SCHOOL

DISTRICT NO. 205, WINNEBAGO-BOONE COUNTIES, ILLINOIS (incorrectly identified as

"Rockford Board of Education") and KENNETH HELD in his Capacity as Principal of Rolling

Green Elementary School, by and through their attorney, Lori L. Hoadley of HINSHAW &

CULBERTSON LLP, and as and for their Reply in Support of their Motion for Judgment on the

Pleadings, pursuant to Fed.R.Civ.P. 12(c), state as follows.

**COUNT I.**    **Plaintiffs Ignore and/or Misapprehend the Standard for a Title IX Peer
Sexual Harassment Case.**

    **A.**    **United States Supreme Court Precedent – Title IX.**

In *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661 (1999), the

Supreme Court set forth the standards that govern a private damages action under Title IX based

on peer sexual harassment. The decision in *Davis* was grounded upon the Court's prior decision

in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989 (1998), in which the

Court held that a school district is not liable for Title IX harassment by a district <u>employee</u>

"unless an official of the school district who at a minimum has authority to institute corrective

measures on the district's behalf has <u>actual notice</u> of, and is <u>deliberately indifferent</u> to the teacher's misconduct." *Gebser*, 524 U.S. at 277 (emphasis added). Subsequent to *Gebser*, the Court held in *Davis* that sexual harassment, even if committed by another student, may be actionable under "limited circumstances" if a school district displays <u>deliberate indifference</u> to the misconduct. *Id.* at 643. In *Gebser*, the Court rejected the notion of liability based on constructive notice, and held that a school's actual knowledge, and the reasonableness of its corrective actions, must be evaluated before liability may be imposed. *Gebser*, 524 U.S. at 289. Liability was, therefore, held to be available only where a school district's deliberate indifference to <u>actual knowledge</u> of harassment effectively causes the discrimination. *Gebser*, 524 U.S. at 292-93; *see also Hawkins v. Sarasota County School Bd*, 322 F.3d 1279, 1284 (11th Cir. 2003).

Deliberate indifference is "intertwined with the question of notice since whether a Board's actions were clearly unreasonable must be measured by <u>what was known</u>." *Hawkins*, 322 F.3d at 1287 (emphasis added). Whether a school board's response to what it actually knows is "clearly unreasonable" may be decided as a matter of law. *Davis*, 526 U.S. at 649. Finally, damages are only available in a peer harassment case where the alleged behavior is so severe, pervasive, and objectively offensive as to deny equal access to education. *Davis*, 526 U.S. at 650.

**B.     Plaintiffs' Apparent Misapprehension of the Standards Applicable under Title IX**

　　1.     *The Allegations of Plaintiffs' Complaint Fail to Show "Actual Notice" of Sexual Harassment in January 2007.*

With respect to Plaintiffs' Title IX claim, the gravamen of Plaintiffs' response to the Defendants' Motion for Judgment on the Pleadings is that the Defendants made "no response at all" to the "actual notice" provided in January 2007. Plaintiffs' brief asserts that Defendants were informed "twice or more" of the problem first-grader's sexual misconduct "as early as

2

January, 2007." (Plaintiffs' brief at 3). In support of this allegation, Plaintiffs cite paragraph 15 of the Complaint, and paragraph 15 of the Answer.

Paragraph 15 of the Complaint alleges that in January, 2007, L.G.'s parents informed Principal Held that their daughter, L.G., told them of a "strange sexual request" allegedly made by one of L.G.'s classmates. Paragraph 15 of the Answer avers that L.G.'s parents told L.G.'s teacher that L.G. told her parents that the problem first grader "made a strange request of L.G.," and that L.G.'s teacher conveyed this information to Principal HELD. An allegation that L.G.'s parents complained to L.G.'s teacher in January 2007 about something their daughter said was allegedly said by another student, hardly establishes "actual notice" of "sexual harassment" under Title IX at that time, since a parent's report of something his child told him is insufficient evidence of Title IX sexual harassment. *Gabrielle M. v. Park Forest-Chicago Heights, Illinois School Dist. 163*, 315 F.3d 817, 822-23 (7th Cir. 2003). Thus, Plaintiffs are incorrect in asserting Defendants had "actual knowledge" of sexual harassment in January 2007, and displayed deliberate indifference in response to that "actual knowledge."

It should also be noted that Plaintiffs' claim that a teacher "complained" of "sexual harassment" to the Defendants in January 2007 misrepresents the pleadings, given that Defendants' Answer does not aver that the teacher "complained" to the principal, but rather, states that the teacher reported what L.G.'s parents told her. (*See* Answer at ¶ 15).

Plaintiffs' brief further asserts that "this District was repeatedly notified of the ongoing and repeated harassment of Plaintiff L.G." Plaintiffs' brief at 4. Notably, Plaintiffs provide no citation to any supporting allegations in the Complaint. Plaintiffs proffer the bald, unsupported assertion that in the aftermath of the alleged January 2007 remark, the Defendants "knew who the perpetrator/harassor was, who the victim was, and that the assault/harassment would be

sexual in nature. They also knew it would occur at school as the prior complaints were made by the parents and the teacher to the Principal. The only issue was "when." " *Id.* These sweeping claims of failed clairvoyance on the part of Defendants do not show deliberate indifference, and thus do not provide a reason to deny the Defendants' motion.

Moreover, a Title IX claim of peer sexual harassment in a public school setting requires that Plaintiffs show "sexual harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S.629, 651, 119 S.Ct. 1661 (1999). Once again, the "strange sexual request" allegedly uttered by L.G.'s classmate in January 2007 falls far short of Title IX sexual harassment; thus, the January 2007 report of a sexual remark allegedly made by the problem first-grader did not provide actual notice of Title IX sexual harassment. Additionally, there is no indication that as a result of having heard the problem first-grader's January 2007 remark, L.G. was deprived of equal access to education.

For the foregoing reasons, the January 2007 report of an allegedly sexual remark/request was not a report of Title IX sexual harassment, and Defendants accordingly did not receive actual notice of Title IX sexual harassment in January 2007.

2. ***Plaintiffs Improperly Impute Misconduct to Defendants for Incidents About Which Defendants Were Never Informed.***

Plaintiffs assert that Defendants were somehow remiss in allowing first-graders to sit close enough to one another that they could touch. (*See* Plaintiffs' brief at 5). According to Plaintiffs, after Defendants were told of the problem first-grader's January 2007 remark, they thereafter "allowed [the problem first-grader] to sit so close to Plaintiff L.G. that he "would put his hands down the back of her pants on a regular basis and fondle her…" (Plaintiffs' brief at 5.)

4

First and foremost, Plaintiffs' Complaint does not allege that such conduct was ever reported to Defendants, and in fact this allegation surfaced for the first time in Plaintiffs' Complaint, when there was nothing Defendants could do to address it. Additionally, one may reasonably question why, if such physically intrusive conduct was happening to Plaintiffs' child "on a regular basis," the parents never bothered to notify the school so that someone could intervene. Plaintiffs further allege that Defendants "knew of the prior behavioral and sexual misconduct of the perpetrator/harassor" – based apparently on the January 2007 remark – and claim such "knowledge" provided a clear "warning of future misconduct." Plaintiffs' brief at 5. This assertion is plainly unreasonable, imputing clairvoyance to staff and administrators, and inferring that a young child who utters a remark with sexual connotations should be presumed to be a predatory sexual deviant who must be physically isolated from his peers.

Plaintiffs' hyperbolic assertions, which attribute sinister connotations to a first-grader's remark to a classmate, ignore the reality of the classroom and the fact that, as acknowledged by the United States Supreme Court, "schools are unlike the adult workplace and [ ] children may regularly interact in a manner that would be unacceptable among adults." *Davis,* 526 U.S. at 651.

Here, the fact that Defendants were told by L.G.'s parents in January that their daughter said the problem first-grader had made a strange sexual remark, does not equate with actual notice of sexual harassment, and did not provide notice to Defendants that the student who made the remark needed to be physically isolated from other students.

> ### 3. *Plaintiffs Fail to Distinguish Gabrielle M. v. Park Forest-Chicago Heights.*

Plaintiffs unsuccessfully attempt to distinguish *Gabrielle M. v. Park Forest-Chicago Heights*, in which the Seventh Circuit rejected a Title IX claim brought by parents of a kindergartner. Plaintiffs claim *Gabrielle* is inapplicable because "there is [ ] an issue of whether

70564379v1 887625

the situation in *Gebrielle* was as egregious as the case at hand, and because in *Gabrielle* "there was no actual notice of a complaint." Plaintiffs' brief at 4 (presumably referring to the January 2007 report about the sexual remark). *Id.*

First, as noted previously, there was no "actual notice of a complaint" of Title IX sexual harassment in the case at bar, prior to the March 2007 incident. Rather, in January 2007 there was a parental report of a remark allegedly made by a classmate of the parents' first-grade daughter. As to the lesser degree of egregiousness allegedly present in *Gabrielle*, in that case the problem student had jumped on the plaintiff-kindergartner's back, leaned against her while holding his hands on his crotch, unzipped his pants in front of students in the class, and repeatedly bothered the plaintiff-kindergartner at lunch. *Id.* at 818-20. He also climbed on other students, kissing them, and was observed putting his hands down inside a classmate's pants at story-time. *Id.* Eventually, the plaintiff-kindergartner in *Gabrielle* became so upset she didn't want to go to school, suffered from nightmares, and experienced loss of appetite and bed-wetting episodes. *Id.* at 819-20. Nevertheless, the district court entered summary judgment for the school district on the Title IX claim, finding that the school's response to the incidents of which it had actual notice was "not clearly unreasonable." *Id.* at 824. The holding was affirmed on appeal.

The facts pled in Plaintiffs' Complaint concerning the incident of which Defendants had actual notice (the single, January 2007 remark), and the conduct that allegedly occurred after the March 2007 incident – verbal innuendoes by the problem first-grader, *i.e.*, telling L.G. she was "hot", and his following her around on the playground – are not more egregious than the conduct alleged in *Gabrielle*, which was found to be not actionable. Moreover, Plaintiffs' brief admits the actions of Defendants in the case at bar were "similar to *Gabrielle*." (Plaintiffs.' brief at 4).

70564379v1 887625

Plaintiffs' claims clearly fail under the standard articulated by the Supreme Court in *Davis*, and under Seventh Circuit precedent in *Gabrielle*.

4.    ***Plaintiffs' Complaint Does Not Allege Conduct that is Severe, Pervasive, and Objectively Objectionable.***

Plaintiffs assert that L.G. suffered "ongoing and repeated harassment" after Defendants had actual notice of peer harassment. Presumably, Plaintiffs are referring to conduct that occurred after the March 2007 closet incident, since this is the first time Defendants received actual notice of sexual harassment. Plaintiffs' reference to ongoing harassment after the incident apparently refers to allegations that the problem first-grader continued to attempt to communicate with L.G., including his telling her that he thought she was "hot", and his following her around on the school grounds, although he had been transferred to a different classroom, and had been assigned a paraprofessional to oversee his activities. Plaintiffs' allegations hardly describe conduct meeting the definition of "ongoing and repeated harassment" that is severe, pervasive, and objectively offensive, sufficient to be actionable under Title IX.

To survive a motion seeking dismissal based upon the pleadings, it is not sufficient to simply label alleged conduct as "sexual harassment," because a plaintiff's showing of grounds of entitlement to relief must include more than a mere "formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v.* Twombly, 127 S.Ct. 1955, 1964-65.

The Court made clear in *Davis* that the words and actions of schoolchildren are not subject to the same standards applicable in workplace sexual harassment cases, and the conduct alleged in Plaintiffs' Complaint falls short of the "sexual harassment" standard applicable under Title IX, which requires a showing of conduct that was severe, persistent, and objectionable enough to deprive the victim of equal access to education. *See, e.g. Davis*, 526 U.S. at 651.

5.    ***Plaintiffs Are Not Entitled to Demand a Particular Response to the Alleged Conduct.***

70564379v1 887625

The Supreme Court has made clear that plaintiffs are not entitled to demand a particular course of action by a school district in response to allegations of peer sexual harassment, and the high court in *Davis* rejected a standard that would force schools to suspend or expel every student accused of misconduct. *See Id.* at 648. All that is required under *Davis* is that the school not be "clearly unreasonable" in it response to known instances of sexual harassment. *Id.* (emphasis added). Here, as shown above, the January 2007 report of a verbal remark by the problem student did not constitute actual knowledge of sexual harassment. Moreover, after the March 2007 closet incident, the problem first-grader was first suspended, and was then re-assigned to a different classroom, and was also assigned to a paraprofessional who would accompany him to monitor his activities throughout the school day. (Answer at ¶25.) Such a response is "not clearly unreasonable," and therefore, under *Davis*, the Defendants are not liable as a matter of law under Title IX.

Plaintiffs complain that the problem student was not, in addition to being re-assigned to a different classroom, also reassigned to a different lunch period, however the Court noted in *Gabrielle* that:

> All that *Davis* requires is that the school not act clearly unreasonably in response to known instances of harassment…it was not clearly unreasonable as a matter of law initially to assign an instructor to oversee a communal recess and lunch period instead of immediately rescheduling the lunch and recess period for a whole kindergarten class.

*Id.* at 825.

Clearly, under both *Gabrielle* and *Davis*, Plaintiffs' Title IX claims fail as a matter of law.

6.      ***Plaintiffs Have Failed to Allege Deliberate Indifference.***

70564379v1 887625

For a school district to be liable under Title IX, in addition to having received "actual notice," it must have responded with "deliberate indifference." *Davis*, 526 U.S. at 643. The Supreme Court has described "deliberate indifference" as "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997) (emphasis added). The January 2007 report of a remark allegedly made by the problem first-grader, which was later shared with L.G.'s teacher by L.G.'s parents, does not meet this stringent standard of fault, given that, even accepting as true the facts pled in Plaintiffs' Complaint, the facts do not suggest that the subsequent March 2007 closet incident was a "known or obvious consequence" of the first grader's alleged "strange" sexual remark in January.

### 7. *Plaintiffs' Brief Grossly Exaggerates the Facts Pled in their Complaint.*

Plaintiffs' gross exaggerations, *i.e.*, their claim that the Defendants <u>knew</u> a sexual assault was imminent based on the January 2007 remark, borders on the absurd. If, in fact, the problem first-grader's remark was a definitive predictor that he was going to assault L.G., one might reasonably ask why L.G. parents would continue to send her, day after day, to a school where she was, under their theory, conclusively destined to be sexually assaulted.

The problem student was first suspended, and was then moved to another classroom after the March 2007 closet incident, and was assigned a paraprofessional who attended him at all times during the school day (Answer at ¶25). Nevertheless, Plaintiffs complain that there was no meaningful response to the March 2007 incident. Plaintiffs' position is patently unreasonable and denies the reasonable efforts by school officials to separate the problem student from L.G. and to closely monitor his activities.

9

**COUNT II.    Plaintiffs Implicitly Acknowledge That Their § 1983 Claims are Preempted**

Plaintiffs do not bother to respond to Defendants' observation that Plaintiffs' claims in Count II, brought under §1983, are preempted by Title IX, and therefore presumably acquiesce that such claims are improper. (*See* Defendants' Motion for Judgment on the Pleadings and Memorandum of Law in Support, and arguments therein, *citing, e.g., Doe v. Smith*, 470 F.3d 331, 339 (7th Cir. 2006); *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 862-63 (7th Cir. 1996).

Nevertheless, Plaintiffs forge on, reiterating their assertion that Defendants violated the Illinois Abused and Neglected Child Reporting Act, violations of which they propose "*could be* a 'custom or usage' of the Defendant Board." Plaintiff's brief at 7 (emphasis added). Notably, Plaintiffs admit there is no private cause of action under the Illinois Abused and Neglected Child Reporting Act, but they nevertheless proceed with a confusing hodge-podge of miscellaneous assertions, gratuitously tossing out unfounded and defamatory allegations such as the following:

> An ongoing custom with this Defendant Board is to avoid providing additional special services to children i.e. psychological, social work, etc., because of the cost and the inconvenience.

Plaintiffs' brief at 7.[1]

In the confused tangle of propositions that appear on page 8, Plaintiffs also chide Defendants for not stating in their Answer to the Complaint whether the offending first grader "ever had special education/services intervention." Apparently Plaintiffs are unaware of the

---

[1]   Plaintiffs' hyperbole reaches its zenith at pages 7 and 8, as these pages are replete with hypothetical assertions of what "might have" (or "might not have") occurred had L.G.'s teacher been "warned" about the alleged dangerous propensities of the problem first-grader. Their premise inexplicably ignores the fact that it was L.G.'s teacher who first received the report from L.G.'s parents about the January 2007 remark which, according to Plaintiffs, definitively predicted that a sexual assault was about to occur. Presumably, Plaintiffs are asserting that although the January 2007 remark conclusively predicted sexual violence, the teacher was somehow unable to recognize its significance.

70564379v1 887625

privacy protections associated with such records.  Defendants will make no response to this attempt to force a public declaration of protected information.

Because Plaintiff's claims in Count II are preempted, Defendants are entitled to judgment as a matter of law.

**COUNT III.** <u>**Count III is barred by the Local Governmental and Governmental Employees Tort Immunity Act.**</u>

Count III alleges that Defendants were wilful and wanton in that they allegedly failed to disseminate information about the problem first-grader to other school personnel, failed to prevent the alleged harassing conduct from occurring, and violated the Illinois Abused and Neglected Child Reporting Act. (Complaint ¶¶45-47, 71).[2]  As discussed in Defendants' Memorandum of Law in Support of the Motion for Judgment on the Pleadings, the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") bars Plaintiffs' claim in Count III. 745 ILCS 10/1-101.

The Tort Immunity Act, at 745 ILCS 10/2-201, provides that: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* "[A]n employee may be granted immunity if he holds either a position involving the determination of policy or a position involving the exercise of discretion." *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill.2d 335, 341, 692 N.E.2d 1177, 230 Ill.Dec. 11 (1998).  In addition, Section 2-109 of the Act immunizes a local public entity from liability for an injury resulting from an employee's act or omission where the employee is not liable. 745 ILCS 10/2-109.

---

[2]   Defendants reiterate that, *arguendo*, even if they had <u>not</u> reported the March 2007 incident, there is no private cause of action for a failure to report under the Reporting Act, and the Court need not decide whether reporting was required here.

11

Together, Sections 2-201 and 2-109 of the Act provide discretionary immunity to public entities. *See, e.g., Smith v. Waukegan Park Dist.*, 2008 WL 1746664, 3 (Ill. April 17, 2008); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 496, 752 N.E.2d 1090 (Ill. 2001).

A school official's duty to report harassment/abuse under the Reporting Act has been held to be discretionary. *Doe v. Bd. of Educ. of Consol. Sch. Dist. 230*, 18 F.Supp.2d 954, 962 (N.D.Ill. 1998). Reporting is only required where an official makes the determination that there is "reasonable cause" to report the suspected harassment/abuse. 325 ILCS 5/4. Reaching such a conclusion clearly requires the exercise of discretion. *Doe*, 18 F.Supp.2d at 962. As a result, Principal Held had discretionary immunity under the Tort Immunity Act.

In addition, as discussed in Defendants' Motion and brief in support, the Reporting Act requires that certain individuals report to DCFS their knowledge of an "abused child," which is defined under the act as a child who is harmed, injured or abused by a "*... parent or immediate family member,* or *any person responsible for the child's welfare,* or *any individual residing in the same home as the child,* or *a paramour of the child's parent*." 325 ILCS 5/3 (emphasis added).

Plaintiffs' tortured reading of the Reporting Act, however, asserts that reporting was required because the Act defines an "Abused Child" as one for whom any:

> person responsible for the child's welfare...a) allows to be inflicted...physical injury...impairment of physical or emotional health...b) creates a substantial risk...of physical injury "which would be likely to cause impairment of physical or emotional health" ... c) "allows to be committed any sex offenses against such child."

Plaintiffs' brief at 9 (emphasis added).

Plaintiffs, therefore, assert that Defendants were required to make a report to DCFS because the term "person responsible for the child's welfare" includes Defendants. *Id.* Under

12

Plaintiffs' interpretation of the Reporting Act, because Defendants were responsible for L.G.'s welfare, and because Defendants allegedly "allowed" the abuse of L.G. to occur, Defendants were accordingly required report that they had caused L.G. to be abused. Such a reading of the Act is simply nonsensical.

Moreover, according to Plaintiffs, Defendants were required to make a report because they had been placed on notice of the problem first-grader's "past tendencies to misbehave" and "knew the identity of the victim." Plaintiffs' brief at 10.[3] Presumably, Plaintiffs do not seriously contend that Defendants were required to make a report to DCFS concerning the alleged sexual remark from January 2007. They presumably also do not propose there was a duty to report the problem first-grader having allegedly put his hands down inside L.G.'s pants, since L.G.'s parents kept this information hidden and did not share it with Defendants until the Complaint was filed. That leaves only the March 2007 closet incident to report. Notably, Defendants' Answer avers that the March 2007 incident _was_, in fact, reported by Principal Held to DCFS. (_See_ Answer at ¶ 57).

Nevertheless, and notwithstanding the fact that the March 2007 incident _was_ reported, Count III asserts a claim for "willful and wanton misconduct" and "deliberate indifference" to "sexual harassment and battery," and Plaintiffs attempt to support this claim by cobbling it together with an alleged violation of the Reporting Act.[4] Thus, one may infer that Plaintiffs are

---

[3] Plaintiffs once again resort to hyperbolic accusations, suggesting that if the Tort Immunity Act provided immunity in cases such as this, "we would have chaos in our schools with children being injured and psychologically damaged every day." (Plaintiffs' brief at 10). Plaintiffs' apparently believe it is only the threat of civil litigation that restrains teachers and administrators from wantonly inflicting injury on students on a daily basis.

[4] Although Plaintiffs also make a desperate new allegation of an "unreasonably dangerous" physical condition of the school building (Plaintiffs' brief at 11) to support their "willful and wanton" claim, this allegation is not pled in the Complaint and should accordingly be disregarded by the Court. Plaintiffs are further urged to remember that Rule 11 imposes a duty to conduct reasonable inquiry

alleging it is Defendants' response to the March 2007 incident that supposedly represents willful and wanton conduct.

Given the Defendants' suspension of the problem first-grader, his subsequent re-assignment to a different classroom, and the Board's assignment of a paraprofessional to accompany the problem first-grader throughout the school day thereafter to monitor his activities (Answer at ¶ 25), it is difficult to imagine how Plaintiffs can, with a straight fact, construe such response action as "willful and wanton," and as demonstrating "deliberate indifference."

Finally, Plaintiffs' reliance on an alleged violation of the Reporting Act entirely disregards the purpose of the Reporting Act: to ensure that appropriate authorities are notified so that a child will be protected from abuse. Here, Plaintiffs' Complaint affirmatively pleads that police were immediately notified on the day of the March 2007 incident, and that L.G. received counseling from the Carrie Lynn Center thereafter. (Complaint at ¶¶ 92, 96). Thus, Plaintiffs themselves have pled that appropriate officials received notice of the incident within a matter of hours, and that L.G. received appropriate social services to deal with the incident. Clearly, then, Plaintiffs have failed to plead conduct that was willful and wanton, or deliberately indifferent, as to the March 2007 incident.

Ultimately, Plaintiffs' claim also fails because the Illinois legislature has not exempted willful and wanton conduct from immunity under 2-201 of the Tort Immunity Act. *See In re Chicago Flood Litigation*, 176 Ill.2d 179, 195-96 (Ill.1997) ("Section 2-201 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct ... Since the legislature omitted such a limitation from the plain language of Section 2-201, then the legislature must have intended to immunize liability for both negligence and willful and wanton

---

and to determine that there exists evidentiary support for factual contentions and representations made to the Court.

70564379v1 887625

misconduct. [citations omitted].") *Id*. Thus, even if Defendants <u>had</u> displayed willful and wanton conduct, even if they had <u>not</u> reported the March 2007 incident to DCFS, they would still be immune from liability under Section 2-201 of the Tort Immunity Act.

**COUNT IV.   <u>Plaintiffs' Claim for Negligence is Barred by the Tort Immunity Act</u>**

As discussed in Defendants' Motion to Dismiss, brief in support thereof, and reply brief, Plaintiffs' Count IV claim asserting negligence is also barred by the Tort Immunity Act, and Defendants are accordingly entitled to judgment as a matter of law on that claim as well.

### Conclusion

Plaintiffs' claim under Count I, Title IX peer harassment, fails because Plaintiffs have not pled facts showing a "clearly unreasonable" response by Defendants to conduct of which they had actual notice, that was sufficiently severe, pervasive and objectively objectionable as to constitute Title IX sexual harassment. Plaintiffs' Section 1983 claims are preempted, and Plaintiffs have no standing to assert a claim for an alleged violation of the Abused and Neglected Child Reporting Act, even if the Act required reporting under these circumstances, and even if there had been a failure to report. Their Count III claim for "willful and wanton" misconduct arising from alleged "deliberate indifference" is barred by the Tort Immunity Act. The Count IV claim against Principal Held in his Official Capacity, for alleged negligence, is also barred by the Tort Immunity Act.

WHEREFORE, for the reasons set forth herein and in Defendants' Motion for Judgment on the Pleadings and their brief in support of that motion, the Defendants, ROCKFORD BOARD OF EDUCATION, SCHOOL DISTRICT NO. 205, WINNEBAGO-BOONE COUNTIES, ILLINOIS, and KENNETH HELD, respectfully request that this Court enter an Order either dismissing this case, or granting judgment in its favor and against Plaintiffs, plus costs of suit.

70564379v1 887625

Respectfully submitted,

HINSHAW & CULBERTSON LLP


By: s/ Lori L. Hoadley
     Lori L. Hoadley
     Hinshaw & Culbertson LLP
     100 Park Avenue
     P.O. Box 1389
     Rockford, IL 61105-1389
     815-490-4900

70564379v1 887625

## AFFIDAVIT OF SERVICE

The undersigned certifies that on June 17, 2008, a copy of the foregoing was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

**S.G. and S.G. v. Rockford Board of Education, School District No. 205**

Joyce O'Neill Austin, Esq.
The Law Offices of Shriver, O'Neill & Thompson
515 N. Court Street
Rockford, IL  61103
Phone  815.963.4896
Fax      815.963.4904


/s  Sue Zimmerman


Firm No. 695
HINSHAW & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL  61105-1389
Phone  815.490.4900
Fax      815.490.4901

70564379v1 887625