UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

S.G. and S.G., as parents and guardians of )
L.G., a minor, )
 )
       Plaintiffs, )
 )
  v. ) No. 08 C 50038
 )
ROCKFORD BOARD OF EDUCTION )
and KENNETH HELD, in his capacity )
as principal of Rolling Green Elementary )
School, )
 )
       Defendants. )

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

I. BACKGROUND

On March 12, 2008, plaintiffs, S.G. and S.G., as parents and guardians of L.G., filed a four-count complaint against defendants, Rockford Board of Education and Kenneth Held, in his capacity as principal of Rolling Green Elementary School. Plaintiffs' claims arise out of a series of incidents at Rolling Green Elementary School during which L.G., a first-grade student, was allegedly sexually harassed by another first-grade student.

Plaintiffs make the following allegations. During the 2006-2007 school year a new first-grade student transferred to Rolling Green because of his past history of behavioral problems, sexual misconduct, and other discipline problems with another school district. A significant portion of the student's history of sexual misconduct or harassment was disclosed to Rolling Green Principal Held or to other school personnel through transferred school records or by the child's guardian. Upon

receiving this information, defendants did not warn other school personnel of the student's previous problems.

Plaintiffs further allege that in January 2007, plaintiffs informed Held at least twice of the "harassing nature and strange sexual requests of the problem student to their daughter, L.G.," another first-grade student in the same classroom. In response, Held informed plaintiffs of the student's behavioral and sexual misconduct issues, and told them they should not be worried. L.G.'s teacher remained unaware of the issues. According to plaintiffs, the sexual harassment continued the rest of the school year, and included incidents in which the student touched L.G. inappropriately. Specifically, plaintiffs allege that on March 14, 2007, without the knowledge of their teacher, the student followed L.G. out of the classroom, took her into a janitor's closet, and "proceeded to sexually batter, harass and abuse her, physically and emotionally, in an aberrant sexual manner." The children were discovered by a passing aid, who had heard L.G.'s cries from the closet. Plaintiffs were eventually contacted by Held, and later that night contacted police.

Plaintiffs allege that after the March 2007 incident no significant action was taken to protect L.G.. The student continued to have access to L.G., telling her she was "hot," directing sexual innuendos towards her, and following and stalking her on the playground and at other locations at Rolling Green. As a result of the emotional and physical trauma caused by the student, L.G. has been in counseling from March 14, 2007, and continues to have emotional and psychological issues. Plaintiffs moved L.G. to a private school for the 2007-2008 school year because Rolling Green "refused to move, control, or supervise" the problem student.

As a result of these incidents, plaintiffs now assert claims against defendants pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and 42 U.S.C. § 1983

(Counts I and II). Plaintiffs also bring supplemental state law claims of willful and wanton misconduct (Count III) and negligence (Count IV).

## II. DISCUSSION

Defendants have filed a motion to dismiss Count IV, pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion for judgment on the pleadings as to the remaining counts, pursuant to Federal Rule of Civil Procedure 12(c). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must look to whether the plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A dismissal is proper only if taking all the facts alleged in the complaint to be true and construing all inferences in her favor, a plaintiff fails to state a claim upon which relief can be granted. Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 618 (7th Cir. 2001). A motion to dismiss should be granted if the plaintiff fails to proffer enough facts to state a claim for relief "that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1974 (2007). A motion for judgment on the pleadings pursuant to Rule 12(c), made once the parties have filed a complaint and answer, will be granted "only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co., 521 F.3d 743, 746 (7th Cir. 2008) (alteration and quotation marks omitted). As such, "[w]hen material issues of fact are raised by the answer and defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted." Crudup v. Barton, No. 98 C 1498, 2002 WL 276285, at *4 (N.D. Ill. Feb. 27, 2002) (quotation marks omitted).

## A. Count I- Title IX

Title IX provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). The United States Supreme Court has found that, pursuant to Title IX, in limited circumstances, individuals who suffer student-on-student sexual harassment have a private right of action against recipients of federal education funding. Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 643 (1999). Specifically, the Court has held that such recipients can be liable for subjecting students to discrimination by other students where recipients are "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650. "[R]ecipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id. at 648. Thus, in order to be liable for student-on-student harassment, defendants must (1) have had actual knowledge of sexual harassment towards L.G., (2) the harassment must have been so severe, pervasive and objectively offensive to deprive L.G. of access to educational opportunities, and (3) their response must have been clearly unreasonable in light of the known circumstances.

Defendants argue that plaintiffs have failed to state a cause of action pursuant to Title IX because plaintiffs have failed to allege that L.G. was subjected to severe, pervasive, and offensive conduct that caused a concrete, negative effect on L.G.'s education, and that defendants' responsive actions were "clearly unreasonable in light of the known circumstances." Neither party disputes that

4

by March 2007 defendants had actual knowledge of the problem student's actions towards L.G.,[1] thus, the court turns to the other two factors.

1. Actionable Conduct

Defendants argue that plaintiffs have failed to allege that L.G. suffered harassment, following the Board's actual knowledge of the harassment, that was so severe, pervasive and objectively offensive to deprive the L.G. of access to educational opportunities. The court will explore each part of this requirement in turn.

a. Severity

"Whether gender-oriented conduct rises to the level of actionable harassment . . . depends on a constellation of surrounding circumstances, expectations, and relationships." Davis, 526 U.S. at 651 (quotation marks omitted). Simple acts of teasing and name-calling among school children are not the type of severe, pervasive, and objectively offensive actions that merit damages under Title IX. Id. at 651-52. Specifically, in Davis, a male student attempted to fondle a female student's

---

[1] Defendants argue that the actual notice of the harassment only occurs when the school has notice of actions that are severe, pervasive and objectively offensive, and that the incidents plaintiffs reported to defendants in January 2007 do not amount to severe conduct. Thus, defendants deny having notice of any sexual harassment in January 2007. However, the court need not confront this issue because even if, as defendants suggest, actual notice occurred in March 2007, plaintiffs have alleged L.G. suffered severe, pervasive and objectively offensive conduct following the March incident. Therefore, even if notice did not occur until March 2007, plaintiffs have alleged a valid cause of action.

That being said, the court notes that it is not at all clear that defendants did not have notice of severe, pervasive and objectively offensive conduct in January 2007. Plaintiffs allege that defendants had knowledge of past "sexual misconduct/harassment" by the problem student, that would have suggested that the student had the propensity to "harm, injure and/or harass sexually other students." In Delgado v. Stegall, 367 F.3d 668, 672 (7th Cir. 2004), the Seventh Circuit pointed out that Davis requires only knowledge of acts of sexual harassment, not previous acts directed against the particular plaintiff. Thus, if a funding recipient has knowledge that a student is a serial harasser such that the risk of harassment is so great that it is almost certain to materialize and it does, that is enough for Title IX liability. Id.

5

breasts, spoke in vulgar language to her, engaged in sexually suggestive behavior, and acted in a suggestive manner toward her. Id. at 633-636.

Plaintiffs allege that on March 14, 2007, the problem student took L.G. into a janitor's closet and "proceeded to sexually batter, harass and abuse her, physically and emotionally in an aberrant sexual manner." In addition, plaintiffs allege that following the incident, the problem student was allowed continued access to her and engaged in a series of problematic behavior which included, telling L.G. she was "hot" and other sexual innuendos, following L.G., and stalking L.G. on the playground and at other locations at Rolling Green.

Defendants argue that plaintiffs' allegations of the conduct following the March 2007 incident are not sufficiently severe to be actionable. However, defendants fail to view plaintiffs' allegations within the constellation of surrounding circumstances. The nature of the problem student's comments and actions toward L.G. after March 2007 have to be viewed in connection with the March 2007 incident. While calling L.G. "hot" or making sexual innuendoes towards her may not, standing alone, amount to actionable harassment, in light of the sexual battery alleged, those actions become much more offensive and severe. This is especially true of plaintiffs' allegation that the problem student continued to "stalk [L.G.] on the playground and other locations at Rolling Green Elementary." Certainly, following an incident of sexual abuse or battery, stalking of the victim by the perpetrator would be more offensive and severe than before the incident. Other courts have similarly found that when otherwise non-actionable conduct follows an act of sexual assault, such conduct increases in severity. See Doe ex rel. Doe v. Hamden Bd. of Educ., No. 3:06-CV-1680(PCD), 2008 WL 2113345, at *5 (D. Conn. May 19, 2008); Doe ex rel. Doe v. Derby Bd. of Educ., 451 F. Supp. 2d 438, 444-45 (D. Conn 2006); Kelly v. Yale Univ., No. Civ.A. 3:01-CV-1591,

6

2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003). Therefore, although the extent of the March 2007 incident is unclear at this time, when construing all inferences in plaintiffs' favor, as this court must, the court cannot say plaintiffs have failed to allege severe, and objectively offensive conduct.[2]

### b. Denial of Equal Access to Education

However, even assuming that plaintiffs have alleged that L.G. suffered severe and offense conduct, "an action under Title IX lies only where the behavior at issue denies a victim equal access to education." Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163, 315 F.3d 817, 823 (7th Cir. 2003). The harassment must have a concrete and negative effect on the victim's education. Id. For example, a denial of equal access may be shown by dropping grades, becoming homebound or hospitalized due to the harassment,, or physical exclusion from a school resource. See Davis, 526 U.S. at 650-51; Gabrielle M., 315 F.3d at 823.

Plaintiffs allege that as a result of the problem student's conduct, L.G. has been in counseling from the trauma she suffered due to the sexual abuse and harassment by the problem student, that L.G. continues to have emotional and psychological issues regarding the trauma, and that L.G.'s

---

[2]Defendants argue that the conduct was no more egregious than the conduct the Seventh Circuit reviewed in Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163, 315 F.3d 817 (7th Cir. 2003). which was not severe or offensive. The actions by students in Gabrielle M. included a student jumping on the victim's back, kissing other students, pulling down his pants in front of other students, leaning against the victim, and fondling other students. Gabrielle M., 315 F.3d at 823. Notably, however, the Seventh Circuit stopped short of concluding that the actions alleged were not severe or offensive, rather the court commented that the alleged conduct was vague and unspecific, and the fact that the children were not engaging knowingly in sexual acts potentially decreased the severity and offensiveness of the conduct. Id. at 822-23. However, even assuming that acts in that case were not deemed severe, the actions by the problem student in Gabrielle M. are distinguishable from the actions in this case, as the actions alleged in that case did not occur after any alleged sexual battery or sexual abuse to the victim comparable to that alleged in this case.

7

parents had to move her to a private school for the next school year because Rolling Green "refused to move, control, or supervise the perpetrator problem student."

Defendants argue Gabrielle M. is instructive on this issue. In that case, as a result of harassing conduct at school, the victim was diagnosed with acute stress disorder and separation anxiety and was placed in counseling. Gabrielle M., 315 F.3d at 820. In addition, following the incident, the child was transferred to another school at the request of her parents. Id. Despite these consequences, the Seventh Circuit concluded that the plaintiff had failed to demonstrate that she was denied equal access to education, stating, "Although she was diagnosed with some psychological problems, the record shows that her grades remained steady and her absenteeism from school did not increase." Id. at 823. The Seventh Circuit did not mention Gabrielle's transfer of schools in its analysis.

The court does not deny that the facts of Gabrielle M. are very similar to the facts of this case. However, Gabrielle M. is distinguishable from this case in at least two significant ways. First, and most importantly, the court in Gabrielle M. was considering a motion for summary judgment and not a motion to dismiss. Id. at 821. Thus, the court was privy to all information concerning the impact of the harassment on the victim's education. This case is at a much earlier stage. Moreover, in Gabrielle M., Gabrielle was moved to another school within the district and thus, the district continued to provide her with an education despite the other child's actions. Id. at 820. In contrast, in this case, L.G. withdrew from the Rockford School District altogether. When considering actions pursuant to Title IX, several other courts have found withdrawal from school is "a concrete and negative effect" on the victim's education. See Vance v. Spencer County Pub. Sch. Dist., 231 F.3d 253, 257-259 (6th Cir. 2000); Doe v. Brimfield Grade Sch., 552 F. Supp. 2d

8

816, 824 (C.D. Ill. 2008); Seiwert v. Spencer-Owen Cmty. Sch. Corp., 497 F. Supp. 2d 942, 953 (S.D. Ind. 2007); Derby, 451 F. Supp. 2d at 445. Therefore, in light of the allegation of L.G.'s withdrawal from school, the court cannot say plaintiffs failed to allege facts showing L.G. suffered a denial of educational access.

## 2. Clearly Unreasonable Response

Defendants also argue that plaintiffs have failed to allege that defendants' response to the harassment was clearly unreasonable. In order to be liable under Title IX, a funding recipient's response to known sexual harassment must be clearly unreasonable. Gabrielle M., 315 F.3d at 824. "[T]his is not a mere reasonableness standard, nor does it require funding recipients to remedy peer harassment." Id. Rather, school administrators "enjoy the flexibility they require" and are deemed deliberately indifferent only the extent that their "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 649.

Defendants argue that plaintiffs do not allege facts that show defendants' response to the problem student's conduct following the March 2007 incident was "clearly unreasonable." Plaintiffs allege that following the March 2007 incident, "[n]o significant action was taken to protect student L.G. from further sexual harassment/assault by the problem student the remainder of the school year." Moreover, plaintiffs allege that the investigative detective warned Held to keep the problem student away "to no avail." Although minimal, plaintiffs' allegations that the school did nothing significant to keep a known perpetrator of sexual abuse away from a victim are enough to

allege a clearly unreasonable response. Compare Williams v. Bd. of Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1296-97 (11th Cir. 2007).

In defendants' reply, they refer to new facts stated in their answer that show in response to the March 2007 incident, the problem student was first suspended, and was then re-assigned to a different classroom, and also was assigned to a paraprofessional who would accompany him to monitor his activities throughout the day. However, when material issues of fact are raised by the answer, a motion pursuant to Rule 12(c) cannot be granted. Supreme Laundry, 521 F.3d at 746. Because they contradict plaintiffs' assertion that "no significant action was taken," the facts offered by defendants create an issue of material fact. As a result, this issue cannot be resolved on a Rule 12(c) motion. Although defendants' arguments may carry the day at summary judgment, plaintiffs have alleged enough facts on this issue to survive a motion to dismiss. Accordingly, defendants' motion for judgment on the pleadings as to Count I is denied.

## B. Count II- § 1983

In Count II, plaintiffs allege that defendants violated L.G.'s substantive due process rights "by failing to protect her and notify the proper authorities when they were put on notice of strange, unusual and aberrant sexual harassment," and that this failure effectively denied L.G. equal access to the elementary school she and her sister attended. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983. To state a claim under § 1983 "a plaintiff must allege two elements: (1) the alleged conduct was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Doe v. Smith, 470 F.3d 331, 338 (7th Cir. 2006). We agree with defendants that plaintiffs' claims are pre-empted by Title IX.

In Smith, the Seventh Circuit considered whether Title IX preempted the plaintiffs' § 1983 constitutional claims. In that case, in addition to claiming a violation of Title IX, the plaintiffs sued the school district and school officials pursuant § 1983 alleging that these parties denied the student equal protection and substantive due process under the Fourteenth Amendment of the United States Constitution. Id. at 338. In reviewing plaintiffs' § 1983 claim, the Seventh Circuit held that there is no parallel right of action under § 1983 against a federally-funded education program where Title IX provides a sufficient private right of action for the allegedly unlawful policy or practice. Id. at 339. The court reasoned that the plaintiffs' § 1983 claims against the school district, alleging the district "generally turned a blind eye" to the abuse of the student, were essentially the same as their claims under Title IX. Id. at 338-39.

Like the plaintiff in Smith, plaintiffs seek § 1983 relief for violations of L.G.'s Fourteenth Amendment rights to due process and equal protection that resulted from defendants turning a blind eye to her sexual harassment. Consequently, the court agrees with defendants that plaintiffs § 1983 claims are preempted by Title IX. Notably, plaintiffs do not argue otherwise.

However, even if their claims were not preempted, plaintiffs fail to state a cause of action under § 1983. A local government cannot be liable pursuant to § 1983 under the doctrine of respondeat superior. Monell v. Dep't of Soc. Servs.., 436 U.S. 658, 691 (1978). Accordingly, a plaintiff cannot prevail against a school district merely by showing the principal of a school, acting within the scope of his official employment, deprived a plaintiff of his rights. Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464, 468 (7th Cir. 2001). Rather, in order to assert a § 1983 claim against a school district, a plaintiff must allege that her constitutional injury was caused by (1) an express policy, (2) a widespread practice that, although not authorized by written law, is so

11

permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority. Klebanowski v. Sheahan, 540 F.3d 633, 637 (7th Cir. 2008). First, plaintiffs do not allege that Held acted pursuant to any express policy of the Board when he failed to protect L.G. or failed to contact authorities.

Moreover, plaintiffs have not alleged any activities by the school board, outside of its treatment of L.G., to establish a widespread pattern or practice. In their response, plaintiffs argue that defendants' failure to follow the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq.,"could be a 'custom or usage' regarding unwritten understandings by the Defendant Board," and assert that "[a] widespread practice might well exist" for failing to inform authorities of each time the alleged sexual harassment occurred. However, plaintiffs only allege that defendants failed to protect L.G. by failing "to notify the proper authorities when they were put on notice of strange, unusual and aberrant sexual harassment" of L.G. in January 2007. "[A] single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1326 (7th Cir. 1993). In addition, even assuming defendants failed to report again after the March 2007 incident, two similar incidents regarding the same course of conduct is generally not enough to show a widespread practice. See id. In this case, plaintiffs do not allege a widespread practice of non-reporting, they only allege conduct by the school board that related to the course of harassment of L.G. by the problem student. See Peck v. W. Aurora Sch. Dist. 129, No. 06 C 1153, 2006 WL 2579678, at *5 (N.D. Ill. Aug. 30, 2006) ("For Monell liability to attach, however, the policy, practice, or custom must be established prior to and be the cause of the alleged illegal conduct."). Plaintiffs also argue in their response that the Board has an "ongoing custom" of failing

12

to provide additional special services to children. However, plaintiffs do not allege any such custom in their complaint.

Finally, plaintiffs also do not allege that L.G.'s constitutional injury was caused by a person with final policymaking authority. An individual is one with final decision making authority only if he is "at the apex of authority for the action in question." Gernetzke, 274 F.3d at 468. Thus, "[m]uncipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-82.

The Seventh Circuit has found that in Illinois, "the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998). In fact, Illinois law provides that "[t]he principal shall assume administrative responsibilities and instructional leadership, under the supervision of the superintendent, and in accordance with reasonable rules and regulations of the board . . . ." 105 ILCS 5/10-21.4a (emphasis added). Plaintiffs do not allege that, inconsistent with this law, Held was delegated any final decision making authority as to any policy of the Board. As a result, plaintiffs have failed to demonstrate that L.G.'s constitutional injury was caused by a person with final policymaking authority. Accordingly, Count II of plaintiffs' complaint is dismissed.[3]

---

[3]Plaintiffs sue Held in his official capacity. The real party in interest in an official-capacity suit is the entity represented and not the individual officeholder. Smith, 470 F.3d at 337 n.12. Thus, any claims made against Held in his official capacity are essentially redundant and treated as claims

C. State Law Claims

In Counts III and IV, plaintiffs bring claims of willful and wanton misconduct and negligence against defendants. Count III is a claim of willful and wanton misconduct against both Held and the Board. Count IV is a claim of negligence against Held. Counts III and IV allege identical facts. Defendants argue that both Counts III and IV are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq.

> Section 2-201 of the Act provides:
>
> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. The Illinois Supreme Court has determined that § 2-201 "requires the act or omission to be both a determination of policy and an exercise of discretion." Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1, 197 Ill. 2d 466, 472 (2001). Policy decisions are "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." Id. Discretionary acts are "those which are unique to a particular public office." Id. (quotation marks omitted). They must be distinguished from ministerial acts, "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion." Id. (quotation marks omitted). Section 2-201 immunity applies to both

---

against the Board. Id. As such, the same reasoning applied to the Board applies to Held.

14

negligent and willful and wanton conduct. Murray v. Chi. Youth Ctr., 224 Ill. 2d 213, 230 (2007); In re Chi. Flood Litig., 176 Ill. 2d 179, 195-96 (1997).[4]

Also relevant here is § 2-109 of the Act, 745 ILCS 10/2-109, which immunizes a local public entity from liability for an injury resulting from an employee's act or omission where the employee is not liable. Together with § 2-201, § 2-109 provides public employers with immunity against allegations that challenge discretionary policy determinations of their employees. Murray, 224 Ill. 2d at 229. Thus, if § 2-201 immunizes school employees in this case, § 2-109 would immunize the Board.[5]

Although not completely clear, it appears that plaintiffs allege that Held breached his duty when he failed to "warn all school personnel of this problem student's history" and failed to "implement proactive measures or other special services to this problem student in order to intervene" and protect other children from injury. Defendants argue that both Held's response to receiving school records for an incoming first-grade student, and his decision whether to implement proactive measures or special services are discretionary and policy decisions protected by § 2-201 of the Act.

---

[4] Plaintiffs argue Doe el rel. Ortega-Piron v. Chicago Board of Education, 213 Ill. 2d 19, 28 (2004) supports the proposition that the Act does not provide defendants protection for willful and wanton conduct. However, Doe deals with § 3-108 of the Act, 745 ILCS 10/3-108, while defendants here invoke § 2-201. Unlike § 2-201, § 3-108(a) contains an explicit exception for willful and wanton conduct. 745 ILCS 10/3-108(a); see also Murray, 224 Ill. 2d at 230.

[5] In Count III, plaintiffs also allege "other administrators and supervisors of Defendant" or "other school personnel" failed to warn school personnel of the problem child's history. However, defendants do not discuss these other personnel in their immunity argument. Because the court rejects defendants' immunity argument at this time, it need not decide whether § 2-109 protects the Board from the actions of the other unnamed employees.

Regardless of whether Held's acts constitute policy decisions, the court cannot decide at this point in the case whether Held's failure to disseminate information and implement special services are discretionary acts.[6] Whether a decision is discretionary is determined on a case-by-case basis based on all the facts and circumstances. Snyder v. Curran Twp., 167 Ill. 2d 466, 474 (1995); Kevin's Towing, Inc. v. Thomas, 351 Ill. App. 3d 540, 547 (2004). Moreover, defendants have the burden of proof on the issue and plaintiffs need not address it in their complaint. See Merritt v. United States, 484 F. Supp. 2d 864, 866 (S.D. Ill. 2007); Hughes v. City of Chi., No. 02 C 7267, 2003 WL 21518592, at *5 (N.D. Ill. July 2, 2003). Although defendants argue these decisions are discretionary acts, this is not apparent on the face of the complaint. Nothing in the complaint demonstrates that decisions regarding the dissemination of information about or special services offered to problem children are unique to the particular office of the principal, or were not addressed by the school's policies. See Van Meter v. Darien Park Dist., 207 Ill. 2d 359, 379-80 (2003). Moreover, defendants have not attached any policy or school code demonstrating these issues fall within the discretion of the principal. See id.; compare Moore v. Bd. of Educ. of Chi., 300 F. Supp. 2d 641, 645 (N.D. Ill 2004) (finding immunity where defendants attached the school's discipline code to their motion to dismiss). Thus, because the facts have yet to be determined, the court cannot decide at this time whether defendants are immune. See Barton v. Randolph County, No. 06-CV-622

---

[6] Plaintiffs argue in their response that Held was also negligent in failing to assure the janitor's closest was locked. However, plaintiffs have not alleged in their complaint anything about Held's responsibility for the janitor closet or anything about the state of the closet. Notably, plaintiffs do not even allege the closet was unlocked. Because these allegations do not appear in the complaint, plaintiffs' argument fails.

16

JPG, 2007 WL 141919, at *3 (S.D. Ill. Jan. 17, 2007); <u>Hillmann v. City of Chi.</u>, No. 04 C 6671, 2005 WL 1766367, at *3 (N.D. Ill. July 20, 2005).[7]

Accordingly, both defendants' motion to dismiss Count III and defendants' motion for judgment on the pleadings as to Count IV are denied.

                                  ENTER:

                                  _____
                                  FREDERICK J. KAPALA
                                  District Judge

Date: November 24, 2008

---

[7] In Counts III and IV, plaintiffs also allege defendants failed to notify the Illinois Department of Children and Family Services of the sexual harassment of L.G., in violation of the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 5/1 <u>et. seq.</u>. Defendants argue that reporting abuse pursuant to the Reporting Act is discretionary and that, in any event, they were not required to report the harassment of L.G. However, the Illinois Appellate Court has held that where a school has first-hand knowledge of the alleged abuse, a failure to report abuse pursuant to the Reporting Act is a ministerial act that is not protected by § 2-201. <u>Doe v. Dimovski</u>, 336 Ill. App. 3d 292, 296-97 (2003); <u>but</u> <u>see</u> <u>Peck</u>, 2006 WL 2579678, at *6.

     However, because the other allegations of Count III and IV survive defendants' immunity argument, the resolution of this issue would not lead to the dismissal of either Count III or IV. As such, it is unnecessary to address the parties' arguments on this issue at this time. However, defendants are free to raise this argument again at summary judgment should they see fit.